**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES : | |
| : | CASE NUMBER: 1:19-CR-00054ELH |
| : | |
| V. : | JUDGE ELLEN L. HOLLANDER |
| : | |
| : | |
| WILLIAM TYLER : | |
| : | |

**MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(C)(1)(A).**

Mr. William Tyler, through undersigned counsel, respectfully moves this Honorable Court to grant this Motion for Compassionate Release based on "extraordinary and compelling reasons" presented by his vulnerability to COVID-19.

Mr. Tyler will soon have served three months of a one-year and one day sentence that began on November 11, 2020. He was and is still incarcerated at the Federal Prison Camp at FCI Buckley, West Virginia, with a projected release date of September 17, 2021.

As the Court will recall, he is 57 years old, and suffers from various underlying medical conditions places him at greater and serious risk of becoming severely ill, or worse, from COVID-19.

As to age, according to the CDC, "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." **Older Adults**, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last checked, 1/20/21). With regard to underlying medical concerns, see, e.g.: CDC, *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last checked, 1/20/21).

1

Many judges in the District of Maryland have issued orders reducing the sentences of inmates vulnerable to COVID-19.  *See, e.g.*, *United States v. Speed*, No. SAG-10-0700, ECF No. 166 (D. Md. Nov. 5, 2020); *United States v. Chambers*, No. PX-99-0451, ECF No. 129 (D. Md. Oct. 23, 2020);  *United States v. Cuevas*, Crim. No. GJH-16-0451, ECF No. 231 (D. Md. Aug. 3, 2020); *United States v. White*, Crim. No. CCB-09-0369, ECF No. 142 (D. Md. July 10, 2020); *United States v. McRae*, Crim. No. PJM-10-0127, ECF No. 134 (D. Md. July 7, 2020); *United States v. Martin*, Crim. No. DKC-04-235, ECF No. 2006 (D. Md. June 24, 2020); *United States v. Brown*, Crim. No. GLR-18-0190, ECF No. 54 (D. Md. June 11, 2020); *United States v. Williams*, Crim. No. PWG-19-0134, 2020 WL 3073320 (D. Md. June 10, 2020); *United States v. Gardner*, Crim. No. JKB-09-0619, ECF No. 72 (D. Md. May 27, 2020); *United States v. Wise*, Crim. No. ELH-18-072, 2020 WL 2614816 (D. Md. May 22, 2020); *United States v. Gutman*, Crim. No. RDB-19-069, 2020 WL 2467435 (D. Md. May 13, 2020); *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674 (D. Md. Apr. 28, 2020); *United States v. Winston*, Crim. No. RDB-13-0639, ECF No. 294 (D. Md. Apr. 28, 2020).  To name just a few.

## STATEMENT OF FACTS

In this case, Mr. Tyler, a lifelong career law enforcement officer pled guilty to taking personal possession of a department-issued machine gun, without arranging for the proper purchase and transfer of the weapon under federal firearm laws.

On January 28, 2020, Mr. Tyler was sentenced by this court to one year and one day in prison he pleaded guilty under Rule 11(c)(1)(B), for the Unlawful Transfer and Possession of a Machine Gun (18 U.S.C. Section 922(o)).  As a reminder to the court, although a weapon is involved, under federal law this is classified as a *non-violent* crime.[1] At the plea, Mr. Tyler

---

[1] On March 26, 2020, Attorney General William Barr issued a memorandum to BOP Director Michael Carvajal directing him to "prioritize the use of [BOP's] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." In the memorandum, the Attorney General

1

expressed genuine remorse for having broken his oath, the law, and his community's trust in him.

After a series of court-approved postponements relating to the COVID pandemic, Mr. Tyler dutifully self-surrendered on November 11, 2020 to begin his sentence in West Virginia. He will soon have served about three months of his sentence. He began serving his sentence in solitary confinement for over a month due to the requirements that he quarantine. After over a month in solitary confinement, he is now housed in an "open" dormitory-style accommodation at the prison camp[2] with two-person cubicles. As it has been from the beginning, he has been largely unable in prison to get access to either the diet, medical or mental health services he needs to properly treat and manage with his serious health conditions.

On December 21, 2020, in accordance with 18 U.S.C. § 3582(c)(1)(A), Mr. Tyler filed a request with the warden of FCI Berkeley for modification of his sentence. The court may not modify a term of imprisonment once it has been imposed except that—

More than thirty days have elapsed since the request was made, Mr. Tyler has not received a decision from the warden. Thus, Mr. Tyler has satisfactorily pursued his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A). As the court is aware, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of

---

notes that there are some at-risk prisoners who are incarcerated for nonviolent crimes, pose a minimal risk of recidivism, and might be safer serving their sentences on home confinement rather than in a BOP facility.

[2] "With cumulative coronavirus case rates among incarcerated people nearly five times higher than in the general population in the United States, and prison and jail staff experiencing substantially higher rates of infection, correctional facilities have become hotspots for infection during the COVID-19 health crisis. Increased virus transmission is due to a combination of the characteristics of correctional facilities—overcrowding, population turnover, spatially concentrated patterns of releases and admissions, the physical design of facilities (e.g., *dormitory-style housing* and poor ventilation), health care capacity— and the vulnerability of incarcerated individuals due to their age and the presence of chronic health conditions." Report: *Decarcerating Correctional Facilities During COVID-19, Advancing Health, Equity and Safety (2020)*, National Academy of Sciences, https://www.nap.edu/resource/25945/interactive/ (last checked, 12/23/2020)

such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), if it finds that extraordinary and compelling reasons warrant such a reduction

## ARGUMENT

Mr. Tyler suffers from hypertension, obesity, hyperlipidemia, diverticulitis, prediabetes, asthma, eczema, a hiatal hernia, and is also suffering from situational anxiety and recurrent major depressive disorder, and is also 57 years old. The combination of his age and the underlying medical conditions described above make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief.

Balancing the 18 USC § 3553(a) factors with the risks to Mr. Tyler posed by COVID-19, his case warrants relief of either sentencing to time served, or release with home confinement and an opportunity for immediate work release for the balance of his sentence. Nothing in Mr. Tyler's life, career, or even in the crime for which he is charged would reasonably suggest that his release would pose a danger to the community.

**A. Mr. Tyler's Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.**

The CDC has specifically listed that people of any age with any of the following conditions "are at [an] increased risk of severe illness from COVID-19": cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index of 30 or higher but less than 40); severe obesity (body mass index of 40 or higher); sickle cell disease; type 2 diabetes; and those who smoke or have a history of smoking. CDC, *People of Any Age with Underlying Medical*

1

*Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Additionally, the CDC has warned that people with the following conditions "might be at an increased risk for severe illness from COVID-19": asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension or high blood pressure; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions such as dementia; liver disease; overweight (body mass index greater than 25 but less than 30); pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); thalassemia (type of blood disorder); and type 1 diabetes. *Id.*

The CDC has further explained that "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." CDC, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. As stated above, Mr. Tyler is 57 years old.

Mr. Tyler thus has several of the medical and age risk factors identified by the CDC based on studies on those infected.

Mr. Tyler's particular vulnerability to COVID-19 constitutes an extraordinary and compelling reason for relief given the spread of the virus within the Bureau of Prisons.

As Judge Gallagher recently observed,

> [The defendant] is at greater risk of infection and resulting complications because of his incarceration. According to the CDC, COVID-19 is likely to spread more quickly in correctional facilities that in non-correctional environments. *See Coronavirus Disease 2019 (COVID-19): Guidance for Correctional & Detention Facilities*, CDC [hereinafter CDC *Guidance for Correctional Facilities*], https://www.cdc.gov/coronavirus/2019-ncov/community/correctional-detention/guidance-correctional-detention.html (last updated Oct. 21, 2020); *see also Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). Incarcerated individuals are often housed in close quarters, with limited access to cleaning supplies and PPE, and limited ability to engage in social distancing. *CDC*

*Guidance for Correctional Facilities, supra*; *see also Coreas*, 451 F. Supp. 3d at 414.

*Speed*, No. SAG-10-0700, ECF No. 166 at 4-5 (D. Md. 2020)

According to the Bureau of Prisons website as of January 20, 2021, 240 inmates are now testing positive for COVID-19 at FCI Beckley and a total of 663 have completed COVID tests. See: BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last checked, 1/20/2021)

Amid this still-unfolding crisis, a widely-recommended and accepted remedy is simple: reduce the prison population by releasing those inmates whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated. Mr. Tyler is exactly the type of individual deserving of compassionate release: He/she is at risk of severe illness and, as will be discussed in the next section, his/her release does not pose a danger to the community and balancing the § 3553(a) factors warrants the requested relief.

**B. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Tyler's Sentence to Time Served, or Adding a Period of Home Confinement with Work Release as a Condition of Supervised Release.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, the fact that Mr. Tyler is older, has compromised physical health, and faces a unique danger of contracting COVID-19 and becoming severely ill, or worse, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

*First*, Mr. Tyler's offense, though involving a weapon, was not and is not considered to be a "violent offense." Thus, while Mr. Tyler's offense conduct was certainly serious, it

involved no allegations of violence or any type of harm to an individual or property. Furthermore, as Judge Chuang has noted, being incarcerated during this outbreak "sufficiently increased the severity of the sentence beyond what was originally anticipated." *Mel*, 2020 WL 2041674, at *3. Programming has been shuttered; rolling lockdowns have restricted movement, increased solitary confinement and 22 hours per day lockdowns; and visitation with loved ones has been indefinitely suspended.

*Second*, continued incarceration is not necessary to protect the community from the crimes of the defendant. He has lived peacefully and productively in his community before, during and after his arrest and sentencing, and pre-surrender period.

In this case, a reduction or modification of Mr. Tyler's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Tyler, whose ability to engage in basic self-protective measures is restricted—warrant relief. Because Mr. Tyler has been incarcerated for 3 months (30% of his 10-month sentence), which is "sufficient, but not greater than necessary" to satisfy the goals of sentencing under § 3553(a), Mr. Tyler seeks an order reducing his sentence to time served. Alternatively, Mr. Tyler seeks an order reducing his sentence of incarceration to time served and modifying his judgment to add the remaining part of his sentence to be served as home confinement (with work release) as a condition of supervised release.

## CONCLUSION

Mr. Tyler has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to reduce his sentence for incarceration to time served, with home confinement (and work release) for the balance of his one year and a day sentence, as a condition of supervised release.

Respectfully submitted,

LAW OFFICE OF PATRICIA CRESTA-SAVAGE, LLC

/s/

PATRICIA CRESTA-SAVAGE
Counsel for Mr. Tyler
7678 Quarterfield Rd, Suite 203
Glen Burnie, Maryland 21061
Phone: 240-260-4100
Fax: 240-260-4105
Email: pat@pcslaw.net

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this January 25, 2021 a copy of the foregoing Motion for Compassionate Release was delivered electronically by e-filing upon Mr. Leo Wise and Mr. Derek Hines, in U.S. Attorney's Office for the District of Maryland, at 36 S. Charles Street, 4th Floor, Baltimore, Maryland 21201.

Patricia Cresta-Savage

1